Andre M. Mura (SBN 298541)
Steve Lopez (SBN 300540)
Hanne Jensen (SBN 336045)
Anna J. Katz (SBN 353036)
**GIBBS MURA LLP**
1111 Broadway Street, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
amm@classlawgroup.com
sal@classlawgroup.com
hj@classlawgroup.com
ajk@classlawgroup.com

*Attorneys for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| TESSA GREEN, on behalf of S.V., and KRISTI VAZQUEZ, on behalf of J.B., and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BYTEDANCE LTD.; BYTEDANCE INC.; TIKTOK LTD; TIKTOK LLC; TIKTOK INC.; TIKTOK PTE. LTD.; and TIKTOK U.S. DATA SECURITY INC.,<br><br>Defendants. | Case No.: 2:25-cv-3527<br><br>MDL No. 3144<br><br>*In re: TikTok, Inc., Minor Privacy Litigation*<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Tessa Green, on behalf of minor child S.V., and Kristi Vazquez, on behalf of minor child J.B., (collectively, "Plaintiffs"), and on behalf of all others similarly situated, allege as follows:

## INTRODUCTION

1.    Over 100 million Americans use TikTok, one of the world's most popular social media platforms. Between a quarter and a third of TikTok's daily users are children under 18, including millions under 13.

2.    TikTok's owner, ByteDance, uses TikTok to collect personal information from its users, including users under the age of 13.

3.    But ByteDance does not provide notice to—or require verifiable consent from—the parents of its under-13-year-old TikTok users before it gathers kids' personal information.

4.    Federal and state laws protect children against ByteDance's conduct.

5.    In 1998, Congress enacted the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 6501, *et seq.*, to protect young children's information online. The Federal Trade Commission ("FTC") subsequently implemented the COPPA Rule, 16 CFR Part 312, which prohibits companies from using unfair or deceptive acts or practices to collect, use, and/or disclose personal information from and about kids online.

6.    By failing to give direct notice or obtain verifiable parental consent before collecting children's personal information, ByteDance has violated COPPA and the COPPA Rule.

7.    ByteDance has been unlawfully and unfairly gathering kids' data for years, despite being ordered by a federal court to stop. In 2019, the U.S. Department of Justice obtained a permanent injunction from a federal court that prohibited ByteDance from collecting and using personal information from its users under 13 without first notifying their parents or gaining parents' verifiable consent.

8.    Even after the permanent injunction was issued, and while ByteDance was still within the ordered reporting period to ensure its compliance with the law,

1

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

ByteDance continued to violate COPPA. The Department of Justice filed a new lawsuit just last year about the same unlawful and predatory conduct.

9.      ByteDance must be held accountable for its repeated disregard of the law and blatant violations of millions of American children's privacy in pursuit of its own profit.

## PARTIES

### Defendants

10.     Defendant **ByteDance Ltd.** is a global company incorporated in the Cayman Islands. Its principal place of business is in Beijing, China, and it also maintains offices in the United States and other countries. ByteDance Ltd. transacts or has transacted business in this District and throughout the United States.

11.     Defendant **ByteDance Inc.**, a wholly owned subsidiary of ByteDance Ltd., is a Delaware corporation whose principal place of business is in Mountain View, CA. ByteDance Inc. transacts or has transacted business in this District and throughout the United States.

12.     Defendant **TikTok Ltd.**, a wholly owned subsidiary of ByteDance Ltd., is a Cayman Island corporation. Its principal place of business is in Shanghai, China, and it also maintains offices in the United States and other countries. TikTok Ltd. transacts or has transacted business in this District and throughout the United States.

13.     Defendant **TikTok LLC**, a wholly owned subsidiary of TikTok Ltd., is a Delaware limited liability company. TikTok LLC transacts or has transacted business in this District and throughout the United States.

14.     Defendant **TikTok Inc.** f/k/a Musical.ly, Inc., a wholly owned subsidiary of TikTok LLC, is a California corporation with its principal place of business in Culver City, CA. TikTok Inc. transacts or has transacted business in this District and throughout the United States.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

15.     Defendant **TikTok U.S. Data Security Inc.** is a Delaware corporation with its principal place of business in Culver City, CA. TikTok U.S. Data Security Inc. transacts or has transacted business in this District and throughout the United States.

16.     Defendant **TikTok Pte. Ltd.** is a Singapore company with its principal place of business in Singapore. TikTok Pte. Ltd. transacts or has transacted business in this District and throughout the United States.

17.     The above-listed defendants operate as a common enterprise.

   a.   Defendants are a series of interconnected companies that operate the TikTok social media platform. Defendant ByteDance Ltd. is the parent and owner of Defendants ByteDance Inc. and TikTok Ltd. TikTok Ltd. owns Defendants TikTok LLC and TikTok Pte. Ltd. TikTok LLC, in turn, owns Defendant TikTok Inc., which owns Defendant TikTok U.S. Data Security Inc.

   b.   Upon information and belief, a group of ByteDance Ltd. and TikTok Inc. executives, including Zhang Yiming, Liang Rubo, Zhao Penyuan, and Zhu Wenjia, direct and control TikTok's core features and development. Since 2019, ByteDance Ltd. and TikTok Inc. have promoted TikTok in the United States, spending hundreds of millions of dollars on advertising, employing U.S.-based staff and executives, and developing and distributing TikTok to run on Apple and Android devices.

   c.   ByteDance Inc. and TikTok Inc. are responsible for developing, providing, and supporting TikTok in the United States. TikTok Pte. Ltd. serves as the U.S. distributor of TikTok through the Apple App Store and Google Play Store. TikTok Ltd. identifies itself as the developer of TikTok in the Apple App Store, and TikTok Pte. Ltd. identifies itself as the developer of TikTok in the Google Play Store.

3

d.    The tiktok.com domain is registered to TikTok Ltd. Defendants share officers and directors. For example, TikTok Inc.'s chief executive officers between 2020 and the present (Kevin Mayer, V Pappas, and Shou Zi Chew), have simultaneously held senior positions at ByteDance Ltd., and ByteDance Ltd.'s chief executive officers (Zhang Yiming and Liang Rubo) have simultaneously served as directors of TikTok Ltd. TikTok Inc.'s Global Chief Security Officer, Roland Cloutier, also served as cyber risk and data security support for ByteDance Ltd. ByteDance Inc. and TikTok Pte. Ltd.'s officers and directors have also overlapped with each other, and with officers and directors of TikTok Inc.

e.    Defendants intertwine their finances; for example, ByteDance Ltd. provides compensation and benefits to TikTok Inc.'s CEO, and TikTok Inc. employees participate in ByteDance Ltd.'s stock option plan. Defendants have one centralized bank account for ByteDance Ltd.'s more than a dozen products, including TikTok.

f.    Defendants operate on a "shared services" model in which ByteDance Ltd. provides legal, safety, and privacy resources, including personnel. ByteDance's largest shareholder, Zhang Yiming, signed the 2019 consent order with the United States on behalf of Musical.ly, TikTok Ltd.'s predecessor company.

18.    Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok LLC, TikTok Inc., TikTok U.S. Data Security Inc., and TikTok Pte. Ltd. are referred to jointly as "Defendants."

19.    Defendants own, operate, control, produce, design, maintain, manage, develop, test, label, market, advertise, promote, supply, and distribute the app TikTok. TikTok is widely available to consumers throughout the United States.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

**Plaintiffs**

20.     Plaintiff Tessa Green is the mother of S.V., who is currently a 12-year-old minor who used and continues to use TikTok. Plaintiff is a citizen of the state of Florida and resides in the city of Spring Hill.

21.     In or around 2022, when S.V. was approximately nine years old, S.V. created and used a TikTok account and viewed content on the TikTok platform. S.V. created a regular TikTok profile and login—not an "Under 13" or "Kids Mode" account.

22.     At all relevant times, Defendants collected S.V.'s personal information for, without limitation:

      a.    enhancing Defendant's internal business models,

      b.    creating targeted advertisements directed to S.V., and

      c.    monitoring S.V.'s private messages without her knowledge or consent, including capturing the content of the client's interactions or communications within the app contemporaneously with transmission and tracing such communications without valid all-party consent.

23.     At no time did S.V. know about Defendants' information-collection practices or consent to Defendants monitoring their activity. And S.V. could not have consented to such terms, should they exist, because S.V. is a minor unable to enter into enforceable contracts.

24.     Defendants never obtained consent from nor notified S.V.'s parent and legal guardian, Tessa Green, at any point before or during their collection and use of S.V.'s personal information.

25.     Plaintiff Kristi Vazquez is the mother of J.B., who is currently a 16-year-old minor who used and continues to use TikTok. Plaintiff is a citizen of the state of Texas and resides in the city of Corpus Christi.

26.     In or around 2018, when J.B. was approximately ten or eleven years old, J.B. created and used a TikTok account and viewed content on the TikTok platform. J.B. created a regular TikTok profile and login—not an "Under 13" or "Kids Mode" account.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

27.    At all relevant times, Defendants collected J.B.'s personal information for, without limitation:

    a.    enhancing Defendant's internal business models,

    b.    creating targeted advertisements directed to J.B., and

    c.    monitoring J.B.'s private messages without her knowledge or consent, including capturing the content of the client's interactions or communications within the app contemporaneously with transmission and tracing such communications without valid all-party consent.

28.    At no time did J.B. know about Defendants' information-collection practices or consent to Defendants monitoring their activity. And J.B. could not have consented to such terms, should they exist, because J.B. is a minor unable to enter into enforceable contracts.

29.    Defendants never obtained consent from nor notified J.B.'s parent and legal guardian, Kristi Vazquez, at any point before or during their collection and use of J.B.'s personal information.

## JURISDICTION AND VENUE

30.    This Court has subject matter jurisdiction over all causes of action alleged in this complaint under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d)(2), because this is a class action with an amount in controversy that exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from the Defendants.

31.    This Court has general personal jurisdiction over Defendants' common enterprise because at least one member of the common enterprise is headquartered, has its principal place of business in the State of California, and has continuous and systematic operations within the State of California.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

32.    The Court also has general personal jurisdiction over ByteDance Inc., TikTok Inc., and TikTok U.S. Data Security Inc., because each company is headquartered and/or has its principal place of business in California.

33.    The Court also has general personal jurisdiction over TikTok LLC because its member company, TikTok Inc., is headquartered and has its principal place of business in California.

34.    This Court also has specific personal jurisdiction over all Defendants because they actively do business in the State of California. Defendants have purposely availed themselves of the benefits, protections, and privileges of the laws of the State of California through the design, development, programming, manufacturing, promotion, marketing, and distribution of the application TikTok, and have purposely directed their activities toward this state. Defendants have sufficient minimum contacts with this state to render the exercise of jurisdiction by this Court permissible and under traditional notions of fair play and substantial justice.

35.    Venue is proper in the U.S. District Court in the Central District of California under 28 U.S.C. § 1391(b) because Defendants regularly conduct business in this District and a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, or emanated from this district.

36.    Venue is also proper under the Judicial Panel on Multidistrict Litigation's ("JPML") authority under 28 U.S.C. § 1407 to transfer and consolidate cases. The JPML did so here, consolidating all litigations concerning Defendants' COPPA violations, like this one, and assigned the cases to George H. Wu on April 3, 2025, under the MDL title *In re: TikTok, Inc., Minor Privacy Litigation*, MDL No. 3144.

## GENERAL FACTUAL ALLEGATIONS

**COPPA requires that Defendants first give direct parental notice or obtain verifiable parental consent before collecting or using personal information of children under age 13.**

37.    More than 25 years ago, the Federal Trade Commission sounded the alarm about threats to children's privacy online. In a 1998 report to Congress, the FTC warned

that online data collection practices posed "unique privacy and safety concerns" for children because of their "particular vulnerability," "the immediacy and ease with which information can be collected from them," and online platforms' unique ability "to circumvent the traditional gatekeeping role of parents."[1]

38.     Congress responded swiftly, enacting the Children's Online Privacy Protection Act, 15 U.S.C. §§ 6501, *et seq.*, colloquially known as "COPPA," that same year. Congress enacted COPPA to reduce the inherent risks of collecting children's data online, adopting the FTC's recommendation to bar websites from collecting personal information from children without first providing actual notice to parents and obtaining their verifiable consent.

39.     Congress then directed the FTC to promulgate a rule implementing the directives of COPPA. The FTC then promulgated the "COPPA Rule," 16 CFR Part 312, in 1999.

40.     The COPPA Rule makes it unlawful for "any operator of a Web site or online service directed to children, or any operator that has actual knowledge that it is collecting or maintaining personal information from a child, to collect personal information from a child" without first (1) providing "notice on the Web site or online service of what information it collects from children, how it uses such information, and its disclosure practices for such information"; and (2) obtaining "verifiable parental consent before any collection, use, and/or disclosure of personal information from children." 16 CFR § 312.3.

41.     Under the COPPA Rule, "child" means "an individual under the age of 13." 16 CFR 312.2.

42.     Defendants are the operators of a website under the COPPA Rule. 16 CFR §

---

[1] Federal Trade Commission, *Privacy Online: A Report to Congress* (June 1998), available at: https://www.ftc.gov/sites/default/files/documents/reports/privacy-online-report-congress/priv-23a.pdf.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

312.2.

43.    The COPPA Rule expressly requires that Defendants "ensure that a parent of a child receives direct notice" of their data collection, use, and disclosure practices. 16 CFR § 312.4(b).

44.    The COPPA Rule also requires that Defendants obtain "verifiable" parental consent before collecting, using, or disclosing children's data. 16 CFR § 312.5(b)(1). Defendants' method of obtaining parental consent must also be "reasonably calculated, in light of the available technology, to ensure that the person providing consent is the child's parent." *Id.*

45.    The COPPA Rule defines personal information as any "individually identifiable information about an individual collected online, including:

    (1)    A first and last name;

    (2)    A home or other physical address including street name and name of a city or town;

    (3)    Online contact information as defined in this section;

    (4)    A screen or user name where it functions in the same manner as online contact information, as defined in this section;

    (5)    A telephone number;

    (6)    A Social Security number;

    (7)    A persistent identifier that can recognize a user over time and across different Web sites or online services. Such persistent identifier includes, but is not limited to, a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier;

    (8)    A photograph, video, or audio file where such file contains a child's image or voice;

    (9)    Geolocation information sufficient to identify street name and name of a city or town; or

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

(10)    Information concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this definition."

16 CFR § 312.2.

**Defendants are in the information business.**

46.    Defendants' TikTok app earns the bulk of its revenue from advertising.

47.    In 2024, TikTok generated an estimated $8 billion in ad revenue in the United States, boasting over 145 million monthly active US users.[2] Although US-based ad revenue has declined since 2022, the US market still makes up more than a third of TikTok's global ad revenue.[3]

48.    Defendants operate a highly sophisticated targeted advertising business built from on information it collects from and about its users.

49.    When an individual uses TikTok, Defendants collect "information that you provide when you set up an account, such as your date of birth, username, email address and/or telephone number, and password," as well as optional information like a personal "bio" or "image."[4]

50.    But the information that users input into TikTok isn't all that Defendants collect. Defendants also collect sweeping information from user content on TikTok, including "photographs, videos, audio recordings, livestreams, comments, hashtags, feedback, reviews" and, notably, all associated metadata "such as when, where, and by

---

[2] Marta Balaga, *Variety*, TikTok and Netflix Reigned Supreme in 2024, With Latin America One of Their Highest Growth Regions, Omdia Research Estimates, Jan. 21, 2025, https://variety.com/2025/tv/global/tiktok-netflix-youtube-latin-america-omdia-research-1236280259/.

[3] Sara Karlovitch, Marketing Dive, TikTok ad revenue could top $32B—if it doesn't lose its biggest market, Mar. 12, 2025, https://www.marketingdive.com/news/tiktok-ad-revenue-could-top-30-billion-ban-us/742056/.

[4] TikTok, *Privacy Policy* (effective December 4, 2024), available at: https://www.tiktok.com/legal/page/eea/privacy-policy/en.

10

whom the content was created"; Defendants "automatically" collect information about a user's "approximate location" and can receive more granular data when "location services" are enabled on a user's account; Defendants "detect" and "collect" information about content a user creates; Defendants collect information about how a user engages with advertisements; and Defendants use cookies to track users "for marketing purposes."

51.    Upon information and belief, Defendants have collected and continue to collect personal information from their under-13 TikTok users, including but not limited to:

a.    Children's names;

b.    Children's ages;

c.    Children's profile pictures;

d.    Children's passwords;

e.    Children's email addresses;

f.    Children's phone numbers;

g.    Children's physical addresses;

h.    Children's geolocations;

i.    Children's phone contacts;

j.    Children's social media contacts;

k.    Children's messages sent to and received from other TikTok users; and

l.    Payment card information associated with children's accounts.

52.    Defendants collect and use this information to enhance their services and generate billions in revenue.

**Defendants have violated and continue to violate COPPA.**

53.    Despite the fact that TikTok has not existed for even 10 years, this is not the first time that Defendants have violated children's privacy, nor even the first time that Defendants have run afoul of COPPA.

54.    This lawsuit marks the latest chapter in a long story of privacy abuses

11

present in Defendants' business practices since its inception.

55.    In 2017, Defendants acquired the United States company Musical.ly, an online platform popular with American teenagers and grade-school-aged children.

56.    In 2018, ByteDance merged Musical.ly with its Chinese-based app, TikTok. ByteDance renamed Musical.ly to "TikTok Ltd." and renamed Musical.ly Inc. to "TikTok Inc."

57.    Two years after Defendants acquired Musical.ly, the Department of Justice filed a lawsuit against Musical.ly, alleging that the platform violated the COPPA Rule. The Department of Justice claimed that Musical.ly had failed to provide parental notice or obtain parental consent before collecting and using children's personal information. *United States v. Musical.ly*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Feb. 27, 2019) (Dkt. No. 1).

58.    On March 27, 2019, the district court entered a stipulated order for civil penalties and permanent injunction against Musical.ly, which prohibited Musical.ly from "failing to make reasonable efforts, taking into account available technology, to ensure that a parent of a child receives direct notice of Defendants' practices about the collection, use, or disclosure of personal information from children," and "failing to obtain verifiable parental consent before any collection, use, or disclosure of personal information from children." *United States v. Musical.ly*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Mar. 27, 2019) (Dkt. No. 10) ("2019 Consent Decree").

**Defendants collect and use child TikTok users' personal information in violation of the COPPA Rule.**

59.    Despite clear and unequivocal guidance from the district court, the 2019 Consent Decree did not stop Defendants from collecting and using child users' personal information without the requisite parental notice and consent under the COPPA Rule.

60.    Defendants implemented changes to TikTok following the 2019 Consent Decree, but they have not cured Defendants' ongoing COPPA Rule violations.

61.    Defendants created an "age gate" that requires TikTok users to provide the day, month, and year of their birth when creating an account.

62.    Since at least March 2019, users who enter a birthdate indicating they are over 13 receive a regular TikTok account.

63.    Since at least March 2019, users who enter a birthdate indicating they are under 13 receive a "TikTok For Younger Users" or "Kids Mode" account.

64.    No parental notice or consent is required to create a Kids Mode account.

65.    Kids Mode differs from regular TikTok accounts. Users with a Kids Mode account may view, but not post, videos on TikTok.

66.    Although Defendants do not require parental notice or consent before creating a Kids Mode account, Defendants still collect personal information from children with Kids Mode accounts, including children's dates of birth and email addresses, and persistent identifiers like children's IP address and unique device identifiers.

67.    Combined with other information that TikTok collects from all accounts, including Kids Mode accounts, Defendants can create detailed profiles on its under-13 TikTok users.

68.    It is not necessary to collect this information for TikTok to operate.

69.    Defendants also know that some children under 13 misrepresent their ages and obtain regular accounts instead of Kids Mode accounts.

70.    Despite Defendants' "age gate" measures, children—including grade school aged children—are ubiquitous on TikTok. The *New York Times* reported that in July 2020, Defendants classified more than a third of its 49 million daily users in the United States as 14 years old or younger.[5] Although the minimum age to use a regular TikTok

---

[5] Raymond Zhong & Sheera Frenkel, A Third of TikTok's U.S. Users May Be 14 or Under, Raising Safety Questions, New York Times, Aug. 14, 2020 (updated Sept. 17, 2020), https://www.nytimes.com/2020/08/14/technology/tiktok-underage-users-ftc.html.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

account is 13 years old, the *Times* reported that TikTok employees had previously pointed out videos posted by children who appeared to be under 13 years old and which were allowed to remain online for weeks. The *Times* also noted that the user data it reviewed did not account for almost 10 million users, who were "classified as being of unknown age."

71.    Defendants know that their self-reported "age gate" is inadequate alone.

72.    In addition to the "age gate," Defendants also use human content moderators to review accounts flagged as belonging to children.

73.    But the purpose of these human reviewers does not appear to be to prevent or deactivate regular TikTok accounts operated by children under 13. Instead, human reviewers have been instructed to ignore external information that may indicate a user is a child and leave up accounts unless the user explicitly admits they are under 13.

74.    Besides human reviewers, Defendants also use internal algorithms to predict users' ages based on their behavior online.

75.    But a former employee reported that Defendants do not use their algorithms' classifications to automatically restrict accounts, take down videos posted by children under 13, or inform users' parents and request verifiable parental consent—all of which would be necessary to comply with Defendants' obligations under COPPA, the COPPA Rule, and the 2019 Consent Decree.

76.    Instead, Defendants use their algorithms to inform corporate strategy by creating rules for moderators.

77.    Defendants know that many of their TikTok users with regular TikTok accounts are under 13, and have the tools to help them identify children using unrestricted, regular TikTok accounts.

78.    Defendants choose not to use the tools they already have to identify children using regular, adult TikTok accounts.

79.    Defendants further choose not to prevent children from continuing to use adult accounts.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

80.    Defendants also allowed users to circumvent their "age gate" by logging in with third-party credentials from other online platforms, like Instagram and Google, until at least May 2022. If a user logged in with third-party credentials, they were not asked for their date of birth upon signing in.

81.    By allowing children to login with third-party credentials, Defendants failed to reasonably determine the ages of their users and allowed children under 13 to use TikTok with regular, adult TikTok accounts.

**Defendants generate advertising revenue by collecting and using children's personal information to serve targeted ads on TikTok.**

82.    Defendants do not only amass the information they collect from under-13 TikTok users—they use it to generate advertising revenue.

83.    Defendants use personal information collected from their users, including those under 13, to develop and serve targeted advertisements.

84.    Defendants use persistent identifiers to track users' behavior and combine those identifiers with personal information they collect from their users to target advertisements that users will be more likely to engage with.

85.    Defendants then sell advertisements to their business partners using the premise that their TikTok users will be more likely to engage with the ads they serve.

86.    Because Defendants use personal information from users under age 13 without parental notice and verifiable parental consent, this practice violates COPPA and the COPPA Rule.

## CLASS ALLEGATIONS

87.    Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

88.    Plaintiffs bring this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

89.    The Classes that Plaintiffs seek to represent are defined as follows:

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

    a.   **Nationwide class:** All United States residents, who were younger than 13 years old when they used TikTok, from whom Defendants collected and/or used personal information without notifying their parents and obtaining verifiable parental consent beforehand. (the "Class").

    b.   **Florida class:** All Florida residents, who were younger than 13 years old when they used TikTok, from whom Defendants collected and/or used personal information without notifying their parents and obtaining verifiable parental consent beforehand (the "Florida Subclass").

    c.   **Texas class:** All Texas residents, who were younger than 13 years old when they used TikTok, from whom Defendants collected and/or used personal information without notifying their parents and obtaining verifiable parental consent beforehand. (the "Texas Subclass").

    d.   Collectively, the "Classes."

90. Plaintiffs reserve the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

91. Excluded from the Classes are Defendants' officers, directors, legal representatives, successors, subsidiaries, and any immediate family members or staff of any judge, justice, or judicial officer presiding over this matter.

92. This action has been brought and may properly be maintained as a class action as it satisfies all requirements of Rule 23. The proposed class satisfies Rule 23(a) requirements of numerosity, typicality, commonality, adequacy, and the requirements of Rule 23(b) and Rule 23(c).

93. **Numerosity**: Although the precise number of individuals in the proposed Classes is unknown to Plaintiffs at this time, publicly available information indicates that Defendants collected and used the personal information of millions of American children under the age of 13 without notifying their parents and obtaining verifiable parental

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

consent first. The proposed Classes are, therefore, so numerous that joinder of all members would be impracticable.

94.    **Common questions of law and fact predominate**: There are questions of law and fact common to the Classes that predominate over any questions affecting only individual class members, including but not limited to:

a.    Whether Defendants now have or previously had a practice of collecting personal information from children younger than 13 years old without first notifying their parents and obtaining verifiable parental consent,

b.    Whether Defendants now have or previously had a practice of using personal information collected from children younger than 13 years old without first notifying their parents and obtaining verifiable parental consent,

c.    Whether Defendants' practices violate the Children's Online Privacy Protection Act of 1998 ("COPPA") and the Children's Online Privacy Protection Rule ("COPPA Rule"),

d.    Whether Defendants' practices constitute unlawful business practices,

e.    Whether Defendants' practices constitute unfair business practices,

f.    Whether Defendants had a duty of care to their users younger than 13 years old,

g.    Whether Defendants' practices violated their duty of care to users younger than 13 years old,

h.    Whether members of the Classes are entitled to damages and/or restitution, and if so, what the method for calculating their damages and/or restitution should be,

i.    Whether (and by how much) Defendants were unjustly enriched by their practices directed toward those under 13 years of age,

j.    Whether Defendants used electronic tracking devices to determine the location or movement of those under 13 years of age,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

k. Whether Defendants obtained (or could obtain) valid consent from their minor TikTok users to determine their location or movement, and

l. Whether Defendants intruded upon the private affairs of those under 13 years of age by accessing, collecting, or using their information for improper purposes.

95. **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the Classes because their interests are aligned with and not antagonistic to those of the other members of the class. In addition, Plaintiffs have retained counsel experienced in handling class claims and claims involving unlawful business practices. Neither Plaintiffs nor their counsel has any interests that might cause them not to pursue this claim vigorously.

96. **Typicality**: Plaintiffs are members of the putative Classes, and their claims are typical of the members of the class, as the claims arise from Defendants' common course of unlawful conduct. The Defendants' wrongful conduct directly caused the damages and injuries of each class member.

97. There are no defenses of a unique nature that may be asserted against Plaintiffs individually, as distinguished from the other members of the Classes, and the relief sought is common to the Classes.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### Negligence

### (*On behalf of Plaintiffs and the Classes*)

98. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

99. At all relevant times, Defendants developed, set up, managed, maintained, operated, supervised, controlled, and benefited from TikTok and Plaintiffs' use of TikTok.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

100.    Defendants owed Plaintiffs and class members a duty to exercise reasonable care in TikTok's development, setup, management, maintenance, operation, supervision, and control to protect its under-thirteen users' personal information.

101.    Defendants also owed a special relationship duty to Plaintiffs and class members to protect them against harm caused by TikTok. Plaintiffs and class members, as children, are comparatively vulnerable and depend on Defendants for a safe environment on TikTok, and Defendants have the superior ability and control over TikTok to provide that safety on its app. The special relationship Plaintiffs and class members have with Defendants substantially benefits Defendants through profits and growth in users and user activity. Defendants could not successfully operate without the increase in users and user activity generated by children.

102.    Defendants created TikTok and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to exercise reasonable care to protect the minors from foreseeable harm while the minors were on TikTok.

103.    Defendants have voluntarily undertaken a responsibility to keep children safe on TikTok.

104.    Defendants are responsible not only for the result of their willful acts, but also for injuries occasioned to Plaintiffs and class members by Defendants' want of ordinary care and/or skill in the management of their property. *See, e.g.,* Cal. Civ. Code § 1714.

105.    Plaintiffs and class members were foreseeable users of TikTok.

106.    Defendants knew that minors such as Plaintiffs would use TikTok.

107.    Defendants invited, solicited, encouraged, or reasonably should have foreseen the fact, extent, and manner of Plaintiffs' and class members' use of TikTok.

108.    Defendants knew or, by the exercise of reasonable care, should have known, that the reasonably foreseeable use of TikTok (as developed, set up, managed, maintained, supervised, and operated by Defendants) would result in Defendants

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

collecting and using Plaintiffs' and class members' personal information in a reasonably foreseeable manner.

109.   At all relevant times, Defendants knew or, by the exercise of reasonable care, should have known that TikTok (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Plaintiffs through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable, including in light of the multiple previous violations of minor children's privacy on TikTok in the last decade.

110.   Defendants knew, or by the exercise of reasonable care, should have known, that their under-13 users would attempt to create regular accounts instead of only trying to create Kids Mode accounts.

111.   Defendants knew, or by the exercise of reasonable care, should have known, that when under-13 users created regular accounts instead of Kids Mode accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

112.   Defendants knew, or by the exercise of reasonable care, should have known, that its "age gate" features were not reasonably adequate to protect the privacy of children's information on TikTok.

113.   Due to Defendants' control over how youth set up accounts on TikTok, Defendants injured Plaintiffs and class members by violating their privacy.

114.   Defendants could have avoided Plaintiffs' and class members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

115.   Imposing a duty on Defendants would benefit the community at large.

116.   Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Plaintiffs and class members.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

117.    Defendants owed a heightened duty of care to youth users of TikTok because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendants owed a heightened duty of care to youth users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

118.    Defendants breached their duty of care that they owed Plaintiffs and class members through their affirmative malfeasance, actions, business decisions, and policies in TikTok's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

    a.    Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not ask for or verify the age or identity of users or by adopting ineffective age and identity verification protocols,

    b.    Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents,

    c.    Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikTok's policies and the 2019 Consent Decree, and

    d.    Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under 13 years old.

119.    Defendants have breached their duty of care that they owed to Plaintiffs and class members through their non-feasance, failure to act, and omissions in the

21

development, setup, management, maintenance, operation, supervision, and control of TikTok. These breaches are based on the Defendants' actions in managing their property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include:

      a.    Failing to implement effective protocols to block users under the age of 13;

      b.    Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of minor users under the age of 13 without prior affirmative authorization, and

      c.    Failing to implement effective parental controls.

120.   A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like Plaintiffs.

121.   At all relevant times, Plaintiffs and class members used TikTok in the manner it was intended to be used.

122.   As a direct and proximate result of Defendants' breach of one or more of its duties, Plaintiffs and class members were harmed by Defendants' violation of Plaintiffs' and class members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

123.   Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to Plaintiffs and class members.

124.   Defendants' conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of their conduct, including to the privacy and welfare of their child users, and warrants an award of punitive damages in an amount sufficient to punish the Defendants and deter others from like conduct.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

125.    Plaintiffs demand judgment against Defendants for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SECOND CAUSE OF ACTION

### Negligence Per Se

### (*On behalf of Plaintiffs and the Nationwide Class*)

126.    Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

127.    At all times, Defendants were obligated to comply with applicable statutes and regulations, including but not limited to:

    a.  The Children's Online Privacy Protection Act, 15 U.S.C. § 6501, *et seq.* ("COPPA"), and

    b.  The FTC's COPPA Rule, 15 U.S.C. § 6501, *et seq.*

128.    At all times, Defendants owed a heightened duty of care to Plaintiffs, class members, and their parents to implement age verification services that were effective and would prevent age-inappropriate access for minor TikTok users.

129.    At all times, Defendants owed a heightened duty of care to Plaintiffs, class members, and their parents to implement age verification services that were effective and would require affirmative authorization from minor users before the sale or sharing of their personal information.

130.    Defendants willfully disregarded the actual age of its minor users.

131.    Congress's enactment of COPPA and the FTC's implementation of COPPA through the COPPA Rule created a cognizable duty of care that online website operators owed their users under 13.

132.    Defendants violated COPPA by failing to provide direct notice and failing to require verifiable parental consent before collecting, using, and/or disclosing its under-13 users' personal information.

133.    By violating COPPA and the COPPA Rule, Defendants breached its duty of

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

care owed to Plaintiffs and class members.

134.   By collecting, using, sharing, disclosing, and/or selling Plaintiffs' and class members' personal information, Defendants have allowed harmful targeted advertising toward their under-13 TikTok users.

135.   Defendants have actual knowledge that they collect and share personal information directly from TikTok users.

136.   Plaintiffs and class members are within the class of persons these statutes and regulations are intended to protect. Plaintiffs and class members are children who use the internet—the exact demographic that COPPA and the COPPA Rule are intended to protect.

137.   Plaintiffs' and class members' injuries are the type of harm these statutes and regulations intend to protect.

138.   Defendants' violations of these statutes and regulations, among others, constitute negligence per se.

139.   As a direct and proximate result of Defendants' breach of their duty of care, Defendants harmed Plaintiffs and class members by violating their privacy and causing them to lose control over when, how, and for what purpose their personal information is collected, used, and disclosed.

140.   Defendants' breach of their duty of care was a substantial factor in causing harm and injuries to Plaintiffs and class members.

141.   Defendants', as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the safety and welfare of its underage users, and warrants an award of punitive damages in an amount sufficient to punish Defendants and deter others from like conduct.

142.   Each of the Defendants is further liable to Plaintiffs and class members for punitive damages based upon its willful and wanton conduct toward underage users.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

# THIRD CAUSE OF ACTION

## California Unfair Competition Law - Unlawful

## Cal. Bus. & Prof. Code § 17200, *et seq.*

### (*On behalf of Plaintiffs and the Nationwide Class*)

143.   Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

144.   California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) ("UCL"), prohibits any "unlawful, unfair, or fraudulent business act or practice." A claim may be maintained under any of the three prongs.

145.   Defendants violated the UCL's unlawful prong.

146.   Defendants engaged in unlawful business acts and practices in violation of the UCL by violating its obligations COPPA and the COPPA Rule.

147.   Defendants violated Sections 312.3, 312.4, and 312.5 of COPPA, 16 C.F.R. §§ 312.3-5, by collecting and using personal information from Plaintiffs and class members when they were under 13 years old without notifying their parents and without obtaining verifiable parental consent.

148.   By collecting, using, sharing, disclosing, and/or selling Plaintiffs' and class members' personal information, Defendants have allowed harmful targeted advertising toward its under-13 TikTok users.

149.   Defendants know that they collect and share personal information directly from TikTok users.

150.   Plaintiffs and class members are within the class of persons these statutes and regulations are intended to protect. Plaintiffs and class members are children who use the Internet—the exact demographic that COPPA and the COPPA Rule are intended to protect.

151.   As a direct and proximate result of Defendants' unlawful business acts and practices, Plaintiffs and class members were injured and lost money or property.

152.   Plaintiffs and class members have a property interest in their personal

information, which includes the right to control who may use it.

153.    Defendants collected and used Plaintiffs' and class members' personal information for their economic and commercial advantage.

154.    Plaintiffs and class members have not received compensation for the Defendants' use of their personal information.

155.    Plaintiffs seek to certify this claim for class injunctive relief, but alternatively, bring this cause of action in a representative capacity to seek public injunctive relief to enjoin Defendants' continued violation of the UCL.

**FOURTH CAUSE OF ACTION**

**California Unfair Competition Law - Unfair**

**Cal. Bus. & Prof. Code § 17200,** *et seq.*

**(*On behalf of Plaintiffs and the Nationwide Class*)**

156.    Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

157.    Defendants violated the UCL's unfairness prong.

158.    Defendants engaged in unfair business acts and practices violating the UCL by collecting and using personal information from Plaintiffs and class members when they were under 13 years old without notifying their parents and without obtaining verifiable parental consent.

159.    As a direct and proximate result of Defendants' unfair business acts and practices, Plaintiffs and class members were injured and lost money or property.

160.    Plaintiffs and class members have a property interest in their personal information, which includes the right to control who may use it.

161.    Defendants collected and used Plaintiffs' and class members' personal information for their economic and commercial advantage.

162.    Defendants did not obtain adequate and verifiable parental consent before collecting or using Plaintiffs' and class members' personal information.

163.    Plaintiffs and class members have not received compensation for the

26

Defendants' use of their personal information.

164.    Defendants' conduct offends established public policy that parents must be notified and consent before their children's personal information is collected or used. By failing to comply with this directive, Defendants have further eroded the traditional gatekeeping function that the government entrusts to parents, making children's online experiences less safe.

165.    Defendants have a pattern of collecting and using children's personal information in defiance of court orders and/or without due care to prevent their misconduct. Defendants will likely continue to do so in the future.

166.    Plaintiffs seek to certify this claim for class injunctive relief, but alternatively bring this cause of action in a representative capacity to seek public injunctive relief to enjoin Defendants' continued violation of the UCL.

### FIFTH CAUSE OF ACTION

### Unjust Enrichment

### (*On behalf of Plaintiffs and the Classes*)

167.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

168.    Defendants have unjustly received and retained monetary benefits from Plaintiffs and class members by profiting from using their personal information under unjust circumstances. An inequitable outcome has resulted from the Defendants' unjust practices.

169.    Defendants knowingly derived benefits from Plaintiffs and class members by collecting, using, sharing, disclosing, and/or selling their personal information.

170.    Defendants have been enriched by the revenues and profits they received from wrongfully collecting, using, sharing, disclosing, and/or selling Plaintiffs' and class members' personal information to build profiles and target advertisements to them.

171.    Defendants failed to provide direct notice or obtain verifiable, affirmative consent from Plaintiffs' and class members' parents before collecting, using, sharing,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

1  disclosing, and/or selling their personal information.

2      172.   If Defendants are permitted to retain the benefits they derived from these

3  wrongful practices, Defendants would be unjustly enriched.

4      173.   Plaintiffs and class members are entitled to relief to prevent an inequitable

5  outcome, including disgorgement of all revenues and profits that Defendants earned due

6  to their wrongful conduct.

7  **SIXTH CAUSE OF ACTION**

8  **California Invasion of Privacy Act**

9  **Cal. Penal Code § 630, *et seq.***

10  **(*On behalf of Plaintiffs and the Nationwide Class*)**

11      174.   Plaintiffs re-allege and incorporate by reference each preceding and

12  succeeding paragraph as though set forth fully at length herein.

13      175.   The California Invasion of Privacy Act ("CIPA") prohibits unauthorized

14  collection and use of electronically transmitted information. *See* Cal. Penal Code §§ 630-

15  638.

16      176.   Section 631(a) of CIPA provides, in pertinent part: "Any person who, by

17  means of any machine, instrument, or contrivance, or in any other manner, intentionally

18  taps or makes any unauthorized connection . . . or who uses, or attempts to use, in any

19  manner, or for any purpose, or to communicate in any way, any information so obtained"

20  violates the law. Cal. Penal Code § 631(a).

21      177.   Defendants are a "person" within the meaning of CIPA.

22      178.   Defendants Inc. and TikTok Inc. are headquartered in California, and

23  substantially designed and effectuated its plans to collect and use personal information

24  from their TikTok users, including under-13 TikTok users, in California.

25      179.   Defendants collected Plaintiffs' and class members' personal information

26  while it was transmitted within locations in California.

27      180.   By failing to provide direct notice and obtain verifiable consent from the

28  parents of Plaintiffs and class members before collecting their personal information,

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527**

Defendants' connection with under-13 TikTok users.

181.   Defendants' connection with its users, including the under-13 TikTok users, was intentional: Defendants intended to collect information from its users, including the under-13 TikTok users.

182.   Defendants used the information they obtained from their TikTok users, including the under-13 users, for internal business development and to generate advertising revenue.

183.   CIPA also prohibits using electronic tracking devices to determine the location or movement of any person without their consent. Cal. Penal Code § 637.7(a).

184.   Defendants did not obtain valid consent from their minor TikTok users to determine their location or movement.

185.   Defendants were required to notify under-13 TikTok users' parents and obtain verifiable consent before collecting or using the location and movement data of the under-13 TikTok users.

186.   Unless enjoined, the Defendants will continue to violate CIPA by collecting and using the personal information of under-13 TikTok users and tracking their locations without authorization.

187.   Plaintiffs and class members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

SEVENTH CAUSE OF ACTION

Intrusion Upon Seclusion

(*On behalf of Plaintiffs and the Nationwide Class*)

188.   Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

189.   By collecting and using Plaintiffs' and class members' personal information without providing parental notice or obtaining verifiable parental consent, Defendants intentionally intruded into a realm in which Plaintiffs and class members have a reasonable expectation of privacy.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

190.   Defendants collect information from their TikTok users, including their under-13 TikTok users, separately and in concert, providing a full portrait of highly personal information, including data points concerning TikTok users' locations.

191.   Defendants intentionally intruded upon the private affairs and seclusion of Plaintiffs and class members by improperly accessing, collecting, and using their information for improper purposes.

192.   Defendants collected and used Plaintiffs' and class members' personal information without obtaining the requisite parental consent to profit from selling targeted advertising to its business partners.

193.   Defendants' practice of selling children's personal information without their parents' consent to profit from serving ads, including serving ads to children, would be highly offensive to a reasonable person and constitutes an egregious breach of social norms, for reasons including but not limited to:

a.   This precise behavior was the focus of Congress's action when it enacted COPPA more than 25 years ago, and Plaintiffs and class members are the precise group of people COPPA was enacted to protect,

b.   Defendants were obligated under the 2019 Consent Decree to comply with COPPA specifically and were still within the reporting period, yet knowingly chose to keep collecting personal information from accounts of users it believed were under 13;

c.   Defendants reportedly had the tools and systems to identify children using regular TikTok accounts but instead of using those tools and systems to notify parents and obtain their consent before collecting and using children's data, Defendants chose to keep the improper accounts running and generated revenue from doing so.

194.   As children, Plaintiffs and class members could not form reasonable expectations about their privacy, and relied on their parents to help them navigate privacy concerns online. But Defendants did not notify Plaintiffs' or class members'

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

parents before collecting their personal information, and did not wait to obtain verifiable parental consent, expressly thwarting the stated purpose of laws enacted to protect Plaintiffs and class members.

195.   The Defendants' intrusion into their seclusion harmed Plaintiffs and class members.

196.   Plaintiffs and class members seek all appropriate relief, including but not limited to compensatory damages for harm to their privacy interests, risk of future invasions of privacy, as well as disgorgement of Defendants' monetary profits earned from intrusions upon Plaintiffs' and the class members' privacy.

197.   Plaintiffs and class members also seek punitive damages sufficient to deter Defendants from continuing to violate COPPA, particularly because the 2019 Consent Decree was insufficient prior deterrence.

### EIGHTH CAUSE OF ACTION

**Florida Deceptive and Unfair Trade Practices Act (FDUTPA) – Unfair**

**Fla. Stat. §§ 501.200, *et seq*.**

**(*On behalf of Plaintiff S.V. and the Florida Subclass*)**

198.   Plaintiff S.V. realleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

199.   Defendants violated the FDUTPA's unfairness prong.

200.   Defendants engaged in unfair business acts and practices violating the FDUTPA by collecting and using personal information from Plaintiff S.V. and Florida Subclass members when they were under 13 years old without notifying their parents and without obtaining verifiable parental consent.

201.   Defendants' actions are practices that are likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.

202.   Defendants' actions are and were offensive to established public policy (COPPA) and are and were immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

203. As a direct and proximate result of Defendants' unfair business acts and practices, Plaintiff S.V. and Florida Subclass members were injured and lost money or property.

204. Plaintiff S.V. and Florida Subclass members have a property interest in their personal information, which includes the right to control who may use it.

205. Defendants collected and used Plaintiff S.V.'s and Florida Subclass members' personal information for their economic and commercial advantage.

206. Defendants did not obtain adequate and verifiable parental consent before collecting or using Plaintiff S.V.'s and Florida Subclass members' personal information.

207. Plaintiff S.V. and Florida Subclass members have not received compensation for the Defendants' use of their personal information.

208. Defendants' conduct offends established public policy that parents must be notified and consent before their children's personal information is collected or used. By failing to comply with this directive, Defendants have further eroded the traditional gatekeeping function that the government entrusts to parents, making children's online experiences less safe.

209. Defendants have a pattern of collecting and using children's personal information in defiance of court orders and/or without due care to prevent their misconduct. Defendants will likely continue to do so in the future.

210. Plaintiff S.V. seeks to certify this claim for class injunctive relief, but alternatively brings this cause of action in a representative capacity to seek public injunctive relief to enjoin Defendants' continued violation of the FDUTPA.

### NINTH CAUSE OF ACTION

### Texas Deceptive Trade Practices Act (DTPA)

### Tex. Bus. & Com. §§ 17.41, *et seq.*

### (*On behalf of Plaintiff J.B. and the Texas Subclass*)

211. Plaintiff J.B. realleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

212. Defendants are "person[s]," as defined by Tex. Bus. & Com. Code § 17.45(3).

213. Plaintiff J.B. and the Texas Subclass members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

214. Defendants advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

215. Defendants engaged in false, misleading, or deceptive acts or practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including:

    a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

    b. Representing that goods or services are of a particular standard, quality or grade, if they are of another; and

    c. Advertising goods or services with intent not to sell them as advertised.

216. Defendants' false, misleading, and deceptive acts and practices include:

    a. Failing to give direct notice or obtain verifiable parental consent before collecting children's personal information;

    b. Failing to use the tools they already have to identify children using regular, adult TikTok accounts; and

    c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Texas Subclass members' personal information, including duties imposed by COPPA, 15 U.S.C. § 6501, *et seq.*, and the COPPA Rule, 16 CFR Part 312.

217. Defendants intended to mislead Plaintiff J.B. and Texas Subclass members and induce them to rely on its misrepresentations and omissions.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

218.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about TikTok's data collection practices with respect to consumers under the age of 13.

219.    Had Defendants disclosed to Plaintiff J.B. and Texas Subclass members that it was unlawfully collecting the personal data of children under the age of 13, Defendants would be unable to continue in business and would have been forced to comply with the law. Instead, Defendants presented their platforms as safe and entertaining platforms for children, and were entrusted with sensitive and valuable personal information regarding millions of consumers, including Plaintiff J.B. and the Texas Subclass. Accordingly, because Defendants held themselves out as a platform for children with a corresponding duty of trustworthiness and care, Plaintiff J.B. and the Texas Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

220.    Defendants had a duty to disclose the above facts due to the sensitivity and extensivity of the personal data in its possession. In addition, such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiff J.B. and the Texas Subclass, and Defendants because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendants.

221.    Defendants engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code § 17.50(a)(3). Defendants engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

222.    Consumers, including Plaintiff J.B. and Texas Subclass members, lacked knowledge about Defendants' data collection practices because this information was known exclusively by Defendants. Consumers also lacked the ability, experience, or capacity to secure the personal information in Defendants' possession or to fully protect their interests with regard to their data. Plaintiff J.B. and Texas Subclass members are minor children lacking expertise in personal data protection.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

223.    Defendants intended to take advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that would result. The unfairness resulting from Defendants' conduct is glaringly noticeable, flagrant, complete, and unmitigated. The personal data collection which resulted from Defendants unconscionable business acts and practices worked a substantial hardship on a significant number of consumers. Plaintiff J.B. and Texas Subclass members cannot mitigate this unfairness because their personal information has already been collected without parental notice or consent.

224.    Defendants acted intentionally, knowingly, and maliciously to violate Texas's Deceptive Trade Practices Act, and recklessly disregarded Plaintiff J.B. and Texas Subclass members' rights.

225.    As a direct and proximate result of Defendants' unconscionable and deceptive acts or practices, Plaintiff J.B. and Texas Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of value of their personal information. Defendants' unconscionable and deceptive acts or practices were a producing cause of Plaintiff J.B.'s and Texas Subclass members' injuries, ascertainable losses, economic damages, and non-economic damages, including their mental anguish.

226.    Plaintiff J.B. and Texas Subclass members have a property interest in their personal information, which includes the right to control who may use it.

227.    Defendants collected and used Plaintiff J.B.'s and Texas Subclass members' personal information for their economic and commercial advantage.

228.    Defendants did not obtain adequate and verifiable parental consent before collecting or using Plaintiff J.B.'s and Texas Subclass members' personal information.

229.    Plaintiff J.B. and Texas Subclass members have not received compensation for Defendants' use of their personal information.

230.    Defendants' violations present a continuing risk to Plaintiff J.B. and Texas Subclass members as well as to the general public. Defendants have a pattern of

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

collecting and using children's personal information in defiance of court orders and/or without due care to prevent their misconduct. Defendants will likely continue to do so in the future.

Plaintiff J.B. and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages; damages for mental anguish; treble damages for each act committed intentionally or knowingly; court costs; reasonable and necessary attorneys' fees; injunctive relief; and any other relief which the court deems proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and class members pray for judgment against Defendants, jointly and severally, and as appropriate to each cause of action alleged as follows:

1.  An order certifying these actions as a class action under Federal Rule of Civil Procedure Rule 23(b)(2), 23(b)(3), and/or 23(c)(4), defining the class as requested herein, appointing Gibbs Mura LLP as class counsel, and finding that Plaintiffs are proper representatives of the proposed class;

2.  Past, present and future general damages, the exact amount of which has yet to be ascertained, in an amount which will conform to proof at time of trial, to compensate Plaintiffs for injuries sustained as a result of the use of TikTok including, but not limited to compensatory damages, actual damages, and nominal damages;

3.  Past, present, and future economic and special damages according to proof at the time of trial;

4.  Punitive or exemplary damages according to proof at the time of trial;

5.  Injunctive relief;

6.  Equitable remedies, including disgorgement of Defendants' ill-gotten gains;

7.  Declaratory relief;

8.  Attorneys' fees;

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

9.    Reasonable costs incurred in connection with this action, including expert witness fees, and other costs as provided by law;

10.    Pre-judgment and post-judgment interest as provided by law; and

11.    For such other and further relief as the Court may deem just and proper.

DATED: April 21, 2025                    Respectfully submitted,

**GIBBS MURA LLP**

By:    */s/ Andre M. Mura*

Andre M. Mura
Steve Lopez
Hanne Jensen
Anna J. Katz
**GIBBS MURA LLP**
1111 Broadway Street, Suite 2100
Oakland, California 94607
Telephone:   (510) 350-9700
Facsimile:   (510) 350-9701
amm@classlawgroup.com
sal@classlawgroup.com
hj@classlawgroup.com
ajk@classlawgroup.com

*Attorneys for Plaintiffs and the Proposed Classes*

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

DATED: April 21, 2025                    Respectfully submitted,


**GIBBS MURA LLP**

By:    _/s/ Andre M. Mura_

Andre M. Mura
Steve Lopez
Hanne Jensen
Anna J. Katz
**GIBBS MURA LLP**
1111 Broadway Street, Suite 2100
Oakland, California 94607
Telephone:   (510) 350-9700
Facsimile:   (510) 350-9701
amm@classlawgroup.com
sal@classlawgroup.com
hj@classlawgroup.com
ajk@classlawgroup.com

*Attorneys for Plaintiffs and the Proposed Classes*

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
CASE NO. 2:25-CV-3527